**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

JOEL WINSLEY                                                                                      PLAINTIFF

VS.                                                                       CIVIL ACTION NO.3:06CV342HTW-LRA

FEDERAL EXPRESS CORPORATION                                                       DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before this court is defendant Federal Express Corporation's ("FedEx") motion for summary judgment brought under the aegis of Rule 56 (b)[1] and (c)[2] of the Federal Rules of Civil Procedure [docket # 42]. This court's subject matter jurisdiction is predicated on both federal question and diversity of citizenship jurisdiction as provided by Title 28 U.S.C. §§ 1331[3] & 1332,[4] respectively.

---

[1] Rule 56 (b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as tp all or any part thereof."

[2] Rule 56 (c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[3] Title 28 U.S.C. § 1331 says: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[4] Title 28 U.S.C. § 1332 (a) provides as follows: The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States; . . .

I.  **Factual Background**

A. **Plaintiff's Employment With FedEx**

Plaintiff Joel Winsley[5], an African American female, began her employment with FedEx[6] in 1987 as a part-time courier working out of the defendant's Jackson, Mississippi, location.  In January 1990, plaintiff was promoted to a full-time courier position.

In 1992, Winsley submitted two applications for a dispatcher position.  She was not selected for either position.  Winsley then challenged her non-selection for the second dispatcher position through the defendant's Guaranteed Fair Treatment ("GFT") process, the company's internal mechanism for handling employee complaints, problems, and concerns.  Winsley prevailed, and she was awarded a dispatcher position.  She served as a dispatcher for over eleven years.

Sometime in 2004, the defendant relocated the dispatch function for the entire River District (encompassing FedEx stations in portions of Louisiana, Mississippi, Alabama, Georgia and the Florida Panhandle) to the New Orleans, Louisiana, area.  Winsley remained in Jackson, Mississippi, and resumed her previous position as a courier.

B. **2004 International/Dangerous Goods Analyst Selection**

In February 2004, the defendant posted an opening for a International Dangerous Goods Analyst ("IDGA") position.  This IDGA position supports all twenty-eight (28) stations within the defendant's River District and reports to District Managing

---

[5]Plaintiff Joel Winsley is an adult resident citizen of Hinds County, Mississippi.

[6]FedEx is a foreign corporation incorporated in Delaware with its principal place of business in Memphis, Tennessee.

Director Raymond W. (Randy) King. The IDGA serves as the River District's expert on shipment matters pertaining to international goods (freight destined for delivery to and from foreign countries) and dangerous goods (explosives, infectious substances, radioactive and corrosive materials). The IDGA also trains station-level specialists and keeps them current on changes, techniques and resources concerning international and dangerous goods. In addition, the IDGA conducts audits of stations within the River District to ensure compliance with all applicable federal regulations.

Winsley applied for the IDGA position. District Managing Director King and Senior Human Resources Representative Al Webre conducted panel interviews for the position on March 9, 2004. Several candidates interviewed for the position, including plaintiff Winsley. On April 1, 2004, defendant selected Lisa Walton, a white female.

**C.     2004 Service Assurance Leader Position**

On April 15, 2004, the defendant posted an opening for a Service Assurance Leader position in the Jackson, Meridian, and Greenville, Mississippi, stations. The principal responsibilities of a Service Assurance Leader ("SAL") are assisting defendant's external customers by responding to inquires about delivery status, resolving customer concerns, and making arrangements for the pick-up of packages. A SAL performs clerical and administrative functions at the station, including running and analyzing reports to provide suggestions for service improvements. Four individuals, including plaintiff, bid on the SAL position. Michael Wright and Kirk Fascio served as the interviewing panelists for this position. Ultimately, Keith Culliver, a white male, was selected.

3

**D.    2006 Operations Manager Position**

On October 21, 2005, an open Operations Manager ("Ops") position at the Jackson Station was posted through the defendant's weekly Career Opportunities listing. An Ops Manager is responsible for selecting, training, supervising, and managing personnel; administering a budget; monitoring performance and ensuring compliance with policies and procedures. Senior Manager Michael Wright did not fill the position at that time.

In February 2006, Wright resigned from FedEx, and Ralph Young took over as Senior Manager of the Jackson station. On March 24, 2006, the Operations Manager position in Jackson was again posted in the Career Opportunities Listing. On March 31, 2006, the position was reposted, with a waiver of the "time in department" requirement. Winsley, along with five other persons applied for the position at that time. Young granted interviews to all of the candidates. Ultimately, Young did not select any of the six people interviewed on May 3, 2006.

During this time, Young informed Winsley that he was not looking for in-station candidates. Senior Manager Young sent Winsley a letter dated May 10, 2006, informing her that she had not been selected for the Operations Manager position. After not making a selection from the pool of candidates interviewed on May 3, 2006, Young reposted the position on May 12, 2006 and June 30, 2006. Young eventually selected for the Operations Manager position, Virginia Wolfe, a white female.

## II.    Procedural Background

On or about May 23, 2006, plaintiff filed a complaint against FedEx in the Circuit Court for the First Judicial District of Hinds County, Mississippi, alleging FedEx and its

employees engaged in conduct, which constituted unlawful discrimination, racial harassment, and retaliation. On June 23, 2006, defendant timely removed the action to this court pursuant to Title 28 U.S.C. §§ 1441,[7] and 1446,[8] respectively.

Subsequently, plaintiff advanced her second amended complaint seeking relief for alleged race and sex discrimination, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000(e), et seq.,[9] and intentional discrimination in employment under Title 42 U.S.C. § 1981, et seq.[10] The complaint prays for both compensatory and punitive damages. Plaintiff has brought no state law claims.

### III.   Legal Standards

**A.   Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of

---

[7]Title 28 U.S.C. § 1441 (a) provides in pertinent part: [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

[8]Title 28 U.S.C. § 1446 (a) provides in pertinent part: A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division . . .

[9]Title 42 U.S.C. § 2000 (e) permits an employee to assert a civil claim against an employer who discriminates against the employee on the basis of race, color, religion, sex, or national origin.

[10]Title 42 U.S.C. § 1981 (a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is material if a reasonable jury would be permittted to return a verdict for the non-moving party.  *Robertson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir.2004).

**B.     Section 1981 & Title VII**

Section 1981 provides that all persons shall have the same rights "as [are] enjoyed by white citizens."  42 U.S.C. § 1981.  Title VII disallows discrimination in hiring or termination of an individual based on his race, color, religion, sex, or national origin.  42 U.S.C. § 20003-2(a)(1).  Like Title VII, Section 1981 prohibits discrimination in private employment against anyone, regardless of race.  *McDonald v. Santa De Trail Transp. Co.*, 427 U.S. 273, 286-87, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).  "The elements of the claims under Title VII and [Section 1981] are identical.  [This court] therefore evaluate[s] both claims using the same analysis."  *Pratt v. City of Houston*, 247 F.3d 601, 605 n. 1 (5th Cir.2001).

An employee can prove discrimination through direct or circumstantial evidence. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir.1994).  Direct evidence is evidence, which if believed, proves the fact in question without inference or presumption.  *Jones v. Robinson Prop. Group*, 427 F.3d 987, 992 (5th Cir.2005).  In the absence of direct evidence, a plaintiff may use circumstantial evidence to demonstrate discrimination.  *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)(quoting *Roberson*, 373 F.3d at 651).

Claims of racial discrimination based on circumstantial evidence are evaluated under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*,

6

411 U.S. 792 (1973); *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir.2007); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Under this three-part scheme, a plaintiff must first establish a prima facie case of discrimination by showing: (1) she is a member of a protected class, (2) she is qualified for the position at issue, (3) she suffered an adverse employment action, and (4) she was replaced by someone outside the protected class or was treated less favorably than others similarly situated. *Okeye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rachid*, 376 F.3d at 312; *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997)).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. *Rachid*, 376 F.3d at 312. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to offer sufficient evidence to create a genuine issue of material fact that either: (1) the defendant's reason is false and is a pretext for discrimination, or (2) that although the defendant's reason is true the plaintiff's protected characteristic was a "motivating factor" in its decision. *Id.*

To determine whether plaintiff can survive a motion for summary judgment, the court will consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148-49, 120

S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

**C.     Retaliation Standard**

Section 704 of Title VII states that "[It] shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . [Title VII]."  42 U.S.C. § 2000e-3(a)(1994).  In order to prevail on a retaliation claim the plaintiff must show:  "(1) that she engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a casual connection between the participation in the protected activity and the adverse employment decision."  *Galindo v. City of Roma Police Dept.* 265 F.3d 1059 (quoting *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985).

### IV.     Discussion

**A.     Winsley Concedes Her Retaliation Claims**

Plaintiff has conceded her retaliation claims regarding the Intentional/Dangerous Goods Analyst ("IDGA"), Service Assurance Leader ("SAL"), and Operations Manager positions.  Plaintiff confesses that these claims should be dismissed.

**B.     An Analysis of Winsley's Race and Sex Discrimination Claims**

Plaintiff has presented no credible direct evidence of racial and sexual discrimination.  Winsley has not adduced any statements, documents, or memoranda indicating such.

Plaintiff attempts to prove discrimination by circumstantial evidence.  Thus, this court must analyze this cause of action through the *McDonnell Douglas Corp.* methodology.

### 1. Prima Facie Case

The parties agree that Winsley made out a prima facie case by showing (1) she is black; (2) she applied and was qualified for the three positions with FedEx; (3) she was rejected despite her qualifications; and (4) the SAL position was filled by Keith Culliver, a white male; the IDGA position was filled by Lisa Walton, a white female; and the Ops. Manager position was filled by Virginia Wolfe, a white female.

### 2. FedEx's Nondiscriminatory Reasoning

Because Winsley has made a *prima facie* case of discrimination, the burden of production shifts to FedEx to produce evidence indicating non-discriminatory reasons for its decision. *Alvarado*, 492 F.3d at 615-16. The defendant may satisfy this burden by producing evidence, which taken as true, would permit a trier of fact to conclude that the defendant had a nondiscriminatory reason for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

FedEx asserts as its legitimate, nondiscriminatory reason, that the deciding officials selected the highest scoring candidates based upon FedEx's standardized process as outlined in its employment manual. FedEx relies upon this justification in all three circumstances before the court.

#### a. SAL Position

Winsley claims that she was better qualified for the SAL position by virtue of her greater length of service and the positions she had held with the company. FedEx replies that: (1) the selectee, Culliver, had been with the company since November 1997; (2) Culliver held many of the same positions including both a.m. and p.m. courier and dispatcher; (3) Culliver has trained in dangerous goods handling and spill clean up;

(4) Culliver received a higher rating (6.9 out of 7.0) than Winsley (6.8 out of 7.0) for the rating period just prior to the SAL section; (5) Winsley's interview score placed her third out of four candidates, with one panelist ranking her last; and (6) the two panelists independently adjudged Culliver to be the best candidate.

Winsley has not disputed any of these facts, and therefore has failed to adduce competent evidence upon which a trier of fact could find that race or sex discrimination was a factor in the selection decision.

      **b.     International & Dangerous Goods Analyst Position**

Winsley argues that she was better qualified because she previously had performed in the International Dangerous Goods Specialist and Spill Clean Up Specialist Position. FedEx offers that Lisa Walton was chosen because: (1) Walton had training and certification in dangerous goods and spill clean up, along with much broader exposure to international shipments and services; (2) Winsley demonstrated little knowledge of international shipments at her interview, and had not worked with FedEx's GENESIS system; (3) Walton had nineteen years of service (including positions as a mail room handler, call center agent and service assurance leader); and (4) Walton had exposure to FedEx's international products and services through her Senior Service Agent.

Again, plaintiff does not present any evidence upon which a trier of fact could find that race or sex discrimination was a motivating factor in the selection decision.

      **c.     Operations Manager Position**

Winsley asserts that "she was more qualified than [selectee Virginia] Wolfe because she had more years of service [(seventeen years)]" with the defendant than

10

Wolfe's (thirteen years). FedEx counters that: (1) discrimination cannot be inferred from the length of service; (2) Wolfe scored higher than Winsley on four out of five prescreening categories, including all three written assessments; and (3) Wolfe received higher marks on most of the interview subcategories and was awarded a much higher overall interview score.

Winsley has not contested any of the facts documenting the process resulting in the selection of Wolfe for the position.

In summation, this court finds that FedEx has aptly stated legitimate, non-discriminatory reasons for the non-selection of Winsley for the three positions at issue in this case.

### 3. Winsley's Allegation of Pretext

In the third stage of the burden-shifting framework, the plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered reason is not true, but instead is a pretext for intentional discrimination. *Hicks*, 509 U.S. at 507-8, 113 S.Ct. 2742. In response to a motion for summary judgment in this third step, the plaintiff must substantiate her claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision. See *Rubenstein v. Adm'rs. of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), cert. denied, 532 U.S. 937, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001); *Evans*, 246 F.3d at 351.

Winsley, in summary form, simply argues that FedEx's stated non-discriminatory reasons are pretextual because she was the best qualified candidate for the positions, and thus the reasons offered for preferring the selectees are merely covers for defendant's discriminatory animus. Ample case law holds, however, that "[g]eneralized

11

testimony by an employee regarding his subjective belief that his discharge was the result of [ ] discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge." *Elliot v. Group Medical & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

    This court has compared the qualifications of the selected candidates to that of Winsley's. This comparison demonstrates that FedEx could have chosen the selectees without regard to race or sex. Winsley has not presented any tangible evidence that race or sex was a motive in choosing to hire the selectees for the positions over Winsley; she submits only her personal belief of discrimination.

    Had Winsley shown by competent evidence that she was clearly better qualified, had she shown by competent evidence that her qualifications were superior to the selectees, or had she shown that her better qualifications " ... leap from the record and cry out to all who would listen that [s]he was vastly--or even clearly--more qualified for the subject job," *id.* at 724 (*quoting Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir.1993) (internal quotes omitted)), this court would view Winsley's argument for pretext in a brighter light. *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir.2002) (*citing EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir.1995)). In *Price*, the Fifth Circuit found that, standing alone, the plaintiff's better education, work experience, and longer tenure with the company were not sufficient to establish that he was clearly better qualified. *Id.* As earlier stated, Winsley here offers only broad, conclusory statements. All of the candidates had strong qualifications. Winsley does not explain in sufficient detail why she believes that her qualifications clearly trumped that of the

selectees, and the court does not find that they do.

### V.   Conclusion

Upon extensive review of the parties' arguments and the record in this case, and mindful of the summary judgment standard, this court finds that Winsley has not demonstrated circumstantial evidence of race or sex discrimination. Winsley has failed to adduce competent evidence upon which the trier of fact could find that race or sex was a factor in the selection decision. Accordingly, this court grants summary judgment to the defendant. This court will enter a Final Judgment in accordance with the local rules.

**SO ORDERED**, this the 20th day of June, 2008.

**s/ HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**


Civil Action No. 3:06-cv-342 HTW-LRA
Memorandum Opinion and Order